And along with my colleague, David Lebowitz, we represent Professor Alan Dershowitz, the intervener in this case. I'm not trying to foreclose anything that you might say, quite the opposite. I would protect your time, but are we right to assume that Professor Dershowitz and Giuffre are in agreement, basically, on how this should proceed? I believe we are, Your Honor. You have no problem with, essentially, the opening of the whole file? Absolutely. That's correct. Mr. Cassell said all you seek is documents that would prove the innocence of your client. That's not correct. We actually moved to unseal the entire summary judgment record. And there's no conflict between the parties in this case? Exactly. Total agreement. So we only have Maxwell as a dissident in this situation? She is not a dissident in this case, either. There is no one who has asserted a privacy interest in the three documents that we initially asked for. So what distinguishes the Dershowitz appeal from the Chernovich and the Miami Herald appeal, really, is that for two and a half years, he's been seeking, he began by seeking three specific documents, the Giuffre manuscript. And he claims it would show his innocence. That's right. They do show his innocence. And we're happy to have the whole record open because those are part of the record. And whatever chips may fall with respect to the rest of the documents, that's fine. But for two and a half years, he has been trying to open up those three particular documents, and he has been relentlessly pilloried in the public discourse on this issue, falsely, improperly. His reputation has been besmirched. And so, really, our issue for the Court today, to put it in very basic terms, is that we want those documents, those three documents to be released immediately. We think there's no need for a remand because there's no one opposing that. Well, except for the fact that some things have to be redacted. I think even you will agree. Names of minors, Social Security numbers, things like that. Absolutely. As to the summary judgment record, that exercise must be gone through. We agree with that. And you agree with the proposal that Mr. Boer first made and we've been elaborating on, that someone sits and looks at each document and says, everything but this can be released? We do. But to be very specific about the three documents that we initially moved for two and a half years ago. And with respect to those three documents, it's your view, as you've stated here, that we, as an appellate court, can make the decision with respect to those three documents. And with respect to those three documents, who, if anyone, is objecting to their release? So far as I can tell, Your Honor, no one. Well, Mr. Giffray wants, if you want the three documents, she wants everything released. Right. So let me say a word about the three documents and then I'll say a word about Ms. Giffray's position as I understand it. As to the three documents, we have the manuscript. All we want from the manuscript are the items that relate to Professor Dershowitz. It's about a page and it demonstrates that there's no allegation that he committed a sexual misconduct of any sort. Okay? There are also the e-mails with Sharon Churcher, who was assisting in trying to sell this manuscript, in which she, for the first time, suggests you should put Alan Dershowitz into your manuscript. And she says, we know he didn't commit any sexual misconduct, but put him in anyways because he's a famous lawyer and it'll help sell the book. We think that should be released immediately. And then the last... It says in the e-mail, you claim? Yes. Clearly. And no one has a privacy interest in that. That's just a commercial discussion between Ms. Giffray and a friend of hers who was a journalist who was assisting her. And the third thing is the reply brief. The reply brief on the motion to quash is argument made to the court. That does present a legal issue, a first impression for this court, which is whether it is possible to be a judicial document and be a document that's related to discovery, a discovery motion. So we can talk about that. But the only reason, to be very clear, the only reason the reply brief is sealed is because it contains those e-mails that I referenced. So once the e-mails come out, there's no reason for the reply brief not to come out. Just... Well, I'll ask Ms. Giffray and make sure that she agrees as well. But just to respond, Judge Bullard, to your point about the objection. The objection seems to be that because two and a half years ago we asked for three documents, those are the three documents that related to him, and he's entitled to them. And now what we're hearing is there needs to be at the lower court some kind of an editorial discussion of is it fair to just relate, to let three go as opposed to the rest.  to just let three go as opposed to the rest. Was there ever any sort of hearing in the district court, evidentiary or otherwise? None. None whatsoever. There was, in fact... How would you describe the state of the record with respect to those three documents? At this point, there was, just to be very clear, Mr. Cassell talks about his client's desire for openness. They have been bitterly fighting the release of these particular documents. I guess the argument which he will, I think, restate is that they don't want to see a few documents released. They want the whole thing released. We're fine with the whole thing, but we want it to happen right away. We've been waiting two and a half years. My client is 81 years old. His reputation has been completely besmirched unfairly in the public discourse, and there's no reason to wait. There's no privacy interests that have been asserted with respect to these three documents. Could you describe the state of the litigation in this matter? Are there any other lawsuits pending elsewhere? No, sir. This is it? This is it. Because at one point when Mr. Schultz indicated his intention to intervene, he seemed to be raising a very interesting question, which surfaces from time to time, which is whether there is an absolute privilege in pleadings or in filings with the courts. Right. Over time, one encounters situations where individuals can be or are defamed in complaints or in other court filings, and those individuals have few, if any, opportunities to deal with the defamation question. But I guess that's all behind us because this action has been settled. That's right, Your Honor. And to be very clear, Mr. Dershowitz was originally accused by Mr. Jouffre in 2011. It was in 2016, as a witness in this case, that he learned of the existence of these documents, and he immediately made an application to intervene and to unseal the records. Now, that was, to use Judge Pooler's term, that was decision number one. Decision number two was the Chernovich application, which we joined. Open up the record. Open everything. We're fine with that. And then the case settled, and then the Miami Herald came in. So we think that this Court can and should immediately call for the release of those three documents, send the rest of the file back for a document-by-document review under Lugosch, and we believe that it all should be open. We support that entirely. You don't object to the summary judgment opinion being released? Absolutely not. We don't object to anything being released. We just want our stuff released immediately. You're not even a party to the summary judgment motion, are you? No. No. I don't think Mr. Dershowitz has an interest in that. I mean, he's not mentioned in the summary judgment. Mr. Dershowitz's position is that the courts should be open. The courts must be open. That is what the First Amendment calls for, and that's the presumption that exists. And as to these three documents, we want them right away. And as to the rest, we want them as soon as they can be released. And you heard our colloquy earlier with Mr. Borer. You have no objection to that kind of procedure if it's necessary? No. I think that would be appropriate. And you would be prepared to participate in that? Of course we would. I mean, I'm not sure that Mr. Dershowitz has much to say because he's only in the record in minimal ways, to my understanding. But, of course, we would participate. We'd participate subject to the court's confidentiality, as Mr. Borer suggested. And I think we can ask him. What does that refer to, the court's confidentiality? In other words, while the individual rulings are being made, the Miami Herald and the Cernovich media folks do not know what's in the record, and so they need to be told that as they are observing it. And we would also participate in that way. I do want to say one other thing. The idea, I just have to say this for the honor of my client, the idea that Mr. Dershowitz has anything to do at all with Mr. Cernovich, other than having appeared on, you know, he came and did an interview with him at some point, is very unfair. But he's not part of a slut-shaming cabal? He's not part of a slut-shaming cabal. Absolutely not. And nor did he in any way suggest that Mr. Cernovich bring an application in this case or any other. Thank you. Thank you. You've reserved some time. Mr. Kessel, you appear to be on all fours with Mr. Dershowitz, right? You agree for the opening of the whole record. Yes. The one point that I would want to emphasize is, well, obviously we dispute his characterization. We think when all the records come out, it will show that Epstein and Maxwell were trafficking my client, Ms. Dufresne, to the powerful friends, including Alan Dershowitz. So you're not interested in giving him the three documents that he wants now? Well, we should get our documents out now. We should get the documents showing we want the documents out now that show Mr. Dershowitz's involvement in the sex trafficking. If those came out now immediately along with the three he wants, we'd be perfectly happy. But I think it's going to have to go back to the district court. That's unfair to have him cherry-pick three documents out of hundreds, many of which are going to show the full breadth of this. They're the only ones that implicate himself. I mean, that's why he picked them. Well, no. Are you saying that Mr. Dershowitz is implicated in other documents? Absolutely. Absolutely. There are other witnesses. And those are the documents that we want to come out to show his involvement in the sex trafficking of his close friend, Jeffrey Epstein. And it should be pointed out, I think, just so there's not any confusion, the Crime Victims' Rights Act case is continuing in Florida right now. And recently, summary judgment was granted in favor of several of my other clients, Jane Doe 1 and Jane Doe 2. And in that, the judge is now considering what remedy should there have been for a violation of the rights of the victims in that case. The CVRA case? The CVRA case. And so it could very well be that some of the input. Was your client ever allowed to join that case? I know she petitioned to do so. So this was the pleading that she filed. We gave nine reasons why she should be allowed to make those allegations. Judge Mara rejected the first reason. He said it was not irrelevant to the joinder motion. But he did say that my client, Ms. Giuffre, could participate in the case in other ways, even though she was not allowed to join. Not a party, but so what do you mean participate? Well, I think that Judge Mara is wrestling with that right now. I think that the point being that now that we know the United States government violated the Crime Victims' Rights Act in reaching the deal with Jeffrey Epstein, the victims are now entitled to participate in fashioning an appropriate remedy for the violation of their rights. And what else? I asked this question of other counsel earlier. What other judicial proceedings are there of which we should be aware or which may be affected by what we do here? The CVRA case and this case, I think, are the two salient ones. Are there no further questions? Thank you. I'll be very brief, Your Honors. Let me be absolutely clear. Alan Dershowitz is happy and prepared and eager for all documents that have been sealed in this case, whatever they say about him, good, bad, or indifferent, to be public immediately. Immediately. Even ones, as Mr. Cassell suggests, that implicate him in this? He believes, Your Honor, in the marketplace of ideas. He believes that more information is better than less information. He believes that he will be able to demonstrate his innocence through the documents that he initially asked for and everything else altogether. So if there's any doubt in anybody's mind about that, I want to just dispel that immediately. Thank you. The idea that Ms. Giuffre is going to stand here through her lawyer and say, we should get our documents, too, is otherworldly. It is Ms. Giuffre who designated these documents and who participated in the sealing of these documents. She could have gone at any time in the last two and a half years in front of Judge Sweet and said, let's let these documents out. And I don't believe that Ms. Maxwell would have objected at that point. But my point very simply is, there's nothing unfair about a party coming in and saying, I want to unseal some documents, and now we don't have to wrestle with that except as to timing. Those three documents should be released immediately. The rest should be subject to the review that Mr. Boras suggested. And what, if anything, do you have to say about the question of the judicial officer or agent who should do this on remand if there is a remand? Do you have a view as to whether Judge Sweet is the appropriate person to do this in the circumstances? Judge Sweet is one of the most distinguished judges in the district. He's somebody I personally venerate. I think it should be a different judge, honestly, for the reason that Mr. Radanzo said. Or a special master. Or a special master or a magistrate judge. I just believe that there's so much water under the bridge over the dam with respect to Judge Sweet, it would be better if it were somebody else. But the magistrate judge or the special master in these circumstances would have to be designated by the district judge to whom the case is remanded. I think that's right, Your Honor. And again, with the greatest amount of respect for Judge Sweet, I actually, as I think about it, I think it ought to be a district judge. Because if you give it to a special master or to a magistrate judge, you then are adding a layer of appeal to the district court, and we're going to be here, you know, another two years. Let the three documents go. Let the rest of the process be done by a district judge. That would be my suggestion. All right. They're not on in this argument, but perhaps Mr. Borer or Mr. Gee, who have been listening attentively, have anything to add as a result of these colloquies. We'd be delighted to hear them. Don't feel the need to accept my invitation. Well, you don't have to invite me twice, Your Honor. Well, there has been discussion about Ms. Giffray's behavior with regard to what ought to be sealed and what ought not to be sealed. And even in this last argument we talked, there was a discussion about how Ms. Giffray could have at any time asked Judge Sweet to not seal or to unseal records. What I'd like to share with the Court is that there is a reason why Ms. Giffray has changed her position. It has to do with money. Ms. Giffray has been pursuing the media for over a decade with regard to this very story. And as Mr. Dershowitz's counsel have suggested, the story that she has woven has expanded. It has become more exotic. It's almost like I see a name in the news and I'm going to make an allegation about that person. I believe that's how Mr. Dershowitz ended up here. I believe that's how Ms. Maxwell ended up here, because there is money to be made. There was a Miami Herald story where Ms. Giffray in November gave a video and linked the interview to this investigative reporter for the Miami Herald. Why is this story coming out now when this so-called defamation case against Ms. Maxwell was settled? There is a reason for that. It is because there is a, this is a kind of a grand jury that Ms. Giffray has convened through the district courts of this country. She's used the discovery process to gather information she never dreamed she would have. She used this discovery process to go after 29 depositions that she never could have gotten on her own. And so using this story that she has, she now has, she has thousands, she has thousands of pages, tens of thousands of pages of discovery matter that now she throws up her hands and says let us unseal all of this, let us reveal all of this. Notwithstanding the fact that she was able to get this information only through the discovery process and only through the protective order. The protective order that the court talks, Your Honor, Judge Cabreras talked about in the street case. That people are relying on this protective order in order to provide the information through discovery and through the compulsory process of the district court. Now I'm going to let Mr. Cassell answer. Yes. Respond to your comments, but let me ask Mr. Borer. But before you sit down, Mr. Gee, let me just ask you, since everyone here other than your client would be pleased to have the sealing order lifted, am I right to interpret the sentiments here? Everyone other than you are willing to open the whole record up. Right. I haven't counted the court. I think that the parties. No, we're not counting you. You can't count us. We're talking about the parties. Right. You're the only party that still wants to retain these materials unsealed. Is that right? That very well may be true, and that is the beauty of our judicial system. Is it true or is it not true? Insofar as what I've heard today, it sounds like, and the court has kind of pulled these individuals as they've come up. But the beauty of our system, the judicial system, is it's not democratic. It is based on fairness. It's based on the Constitution. It's based on the right to privacy, including of people who are not present in this courtroom, Your Honor. Help me. Who are they? These would be the 29 depositions and the multiple non-parties who were subjected to the compulsory process of Judge Sweet's court, that were required to produce information to satisfy Ms. Jaffray's demands for it. Well, this goes back to the district court for the kind of process we've been discussing. What interest, who is it that should be informed, as you're suggesting, that they participate? Who apart from the parties represented here today would participate in any such proceeding in the district court? Oh, Your Honor. I do, I dearly wish to avoid sliding down that slippery slope. I think there are a lot of people whose privacy interests are at stake here. What I suggest to this court is that Judge Sweet. Are they not, are they unaware of that? I am absolutely certain that these non-parties are unaware that this proceeding right now is going on. And the court should be aware that some of these non-parties showed up for their depositions with lawyers. Those lawyers said on the record, we assume, and we are expecting, that what our client is about to testify to under the authority of Judge Sweet's subpoena, his subpoena power in the compulsory process, that our client's information, you are asking highly sensitive and intrusive questions. We believe these materials, our client's information, will be protected under the protective order. And that is what I think that so far there has been not sufficient attention paid to today. Let me ask you a final question. Yes. With respect to the extent of the documents we're talking about, given what we now know about the parties before us and what they're interested in, what percentage of the constellation of documents at issue here are of interest to you? That is, do you have an interest in all of these documents? We have a 100 percent interest in 100 percent of the documents in this case where we are half of the parties that were present. We entered into this entire process under this protective order that we apparently are, everyone is now saying, all these parties and non-parties are now saying we didn't have a right to rely on. That's not what happened in 2016. It certainly wasn't what happened throughout the entire deposition period, the entire time that discovery was going on. We are forgetting a significant, that during the entirety of this case, everyone was assuming that the protective order was in place. Ms. Giffray never came to us and said, by the way, at any time in the future, we might ask that everything be unsealed. That was not the topic of conversation between the Maxwell camp and the Giffray camp. All right. I'm going to let Mr. Cassell respond as he may wish to respond. Thank you, Your Honor. And then finally, Mr. Borer. Thank you, Your Honor. Why is this information just coming up now? Well, my client was a victim of a very dangerous sex trafficking organization, and she managed to escape to Australia in about 2005, give or take. And then in 2007, the United States government entered into a secret non-prosecution agreement, concealed that, that's the term used by Judge Mara, from the victims, misled, that's the word used by Judge Mara, the victims about what was going on. And when we learned about it, the victims, in 2008, what was going on, litigation was initiated to try to get Jeffrey Epstein prosecuted. And it was just about two weeks ago, 13 days ago, that Judge Mara finally ruled conclusively that the U.S. government violated the rights of the victims by keeping this agreement secret. So that's the underlying factual cause. Just one last point. We heard a reference from Mr. Gee about how people relied on the protective order. Remember, the protective order was going to be lifted if the case went to trial. So any understandings of confidentiality were only understandings that the confidentiality would be temporary. Mr. Borer, any final comments from you, or are you resting on what you said earlier? I only want to say one thing. This can all be worked out at the hearing where we finally go document by document the way the law requires. Thank you. Thank you.